# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| **LORENZO M. WILSON,** | } |
| | } |
| **Plaintiff,** | } |
| | } |
| v. | }   Case No.: 7:09-CV-2267-RDP |
| | } |
| **TUSCALOOSA COUNTY, et al.,** | } |
| | } |
| **Defendants.** | } |

## MEMORANDUM OPINION

This case is before the court on Defendants' Motion to Dismiss (Doc. #5), filed November 30, 2009. The parties have fully briefed the Motion (Docs. #8, 9, 13), and the matter is properly under submission. For the reasons set forth, Defendants' Motion is due to be granted in part and denied in part.

**I.     PROCEDURAL HISTORY**

On November 6, 2009, Plaintiff filed his complaint (Doc. #1) against Defendants Tuscaloosa County and W. Hardy McCollum. On November 30, 2009, Defendant McCollum filed his motion to dismiss (Doc. #5), which sought dismissal of Plaintiff's complaint pursuant to Rules 12(b)(1) and 12(b)(6). On December 1, 2009, the court ordered briefing (Doc. #7), and Plaintiff responded to Defendant McCollum's Motion on December 8, 2009 (Doc. #8). In response, on December 11, 2009, both Defendants *jointly* replied (Doc. #9). In their reply, Defendant McCollum continued to assert grounds raised in his Motion, and Defendant Tuscaloosa County, for the first time, asserted various bases for relief pursuant to Rule 12(b)(6). Nevertheless, Plaintiff did not object to Defendant Tuscaloosa County's failure to raise these matters in an initial brief; instead, on December 18, 2009,

Plaintiff filed a response (Doc. #13), in which he directly replied to Defendant Tuscaloosa County's contentions. The matters raised have been fully briefed, and Defendants' Motion is now properly under submission.

## II.     STATEMENT OF FACTS[1]

On or about May 27, 2008, two parcels of land, located in Tuscaloosa County and owned by Plaintiff, were sold to satisfy outstanding property taxes due. (Doc. #1 ¶ 5). The first parcel was sold for $4,100.00 in order to satisfy a $543.04 delinquent property tax, which resulted in a $3,556.96 excess. (Doc. #1 ¶ 5A). The second parcel was sold for $1,600.00 in order to satisfy a $123.84 delinquent property tax, which resulted in a $1,476.16 excess. (Doc. # 1 ¶ 5B).

On July 1, 2008, Plaintiff attempted to claim the excess from the tax sales at Defendant McCollum's office. (Doc. #1 ¶ 6). In response, a member of Defendant McCollum's staff, Cindy, instructed Plaintiff that (1) the money was not held in the office and (2) she would call Plaintiff to provide him with further details. (Doc. #1 ¶ 6). On July 7, 2008, Plaintiff returned to Defendant McCollum's office and inquired into the status of the excess from the tax sales. (Doc. #1 ¶ 7). At this point, Plaintiff was instructed to submit an affidavit substantiating his lawful ownership of the two parcels of land. (Doc. #1 ¶ 7). Plaintiff complied and submitted the appropriate affidavit. (Doc. #1 ¶ 7). In response, Plaintiff was instructed to submit not only the affidavit, but also a quit claim deed covering the seized and sold property. (Doc. #1 ¶ 7). Plaintiff declined this request. (Doc. #1 ¶ 7).

---

[1] At the motion to dismiss stage, the court "accept[s] the allegations in the complaint as true and contru[es] them in the light most favorable to the plaintiff." *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003) (citing *Monzon v. United States*, 253 F.3d 567, 569-70 (11th Cir. 2001)). Moreover, the court "liberally construe[s] *pro se* pleadings." *Bell v. Fla. Highway Patrol*, 325 Fed. App'x 758, 759 (11th Cir. 2009) (citing *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998)).

At some point thereafter, Plaintiff contacted Defendant McCollum regarding the proper procedure for obtaining the excess funds. (Doc. #1 ¶ 8). In response, Defendant McCollum instructed Plaintiff to submit either (1) a cashiers check for $5,815.00 or (2) a quit claim deed covering the seized and sold property. (Doc. #1 ¶ 8). Plaintiff asserted that Alabama law does not place these preconditions on the receipt of excesses from tax sales. (Doc. #1 ¶ 8). Defendant McCollum responded: "If you had paid your taxes you wouldn't be in this predicament." (Doc. #1 ¶ 8).

Moreover, before filing the instant lawsuit, Plaintiff requested access to certain records memorializing prior tax sales and excesses paid. (Doc. #1 ¶ 9). According to Plaintiff, his requests have gone unanswered. (Doc. #1 ¶ 9).

Accordingly, Plaintiff's lawsuit stems from his allegedly wrongful deprivation of excess tax sales and inability to obtain certain records in violation of the United States Constitution and various Alabama statutes. (Doc. #1 ¶¶ 13-33). Specifically, Plaintiff claims (1) violation of his First Amendment right to freedom of speech and access to court (Doc. #1 ¶¶ 13-15); (2) violation of his Fifth Amendment[2] right against property deprivations without due process of law and to just compensation for government confiscation of property (Doc. #1 ¶¶ 16-18); (3) violation of his Fourteenth Amendment right to due process of law and to equal protection of the law (Doc. #1 ¶¶ 19-21); (4) violation of his rights under Alabama Code § 40-10-28 (Doc. #1 ¶¶ 22-24); (5) violation

---

[2]As an aside, Plaintiff has pleaded a Fifth Amendment due process violation against Defendants Tuscaloosa County and McCollum. But the Fifth Amendment "attaches only when the federal government seeks to deny a liberty or property interest." *Knoetze v. United States Dep't of State*, 634 F.2d 207, 211 (5th Cir. 1981) (citing *Perry v. Sindermann*, 408 U.S. 593 (1972); *Downing v. Williams*, 624 F.2d 612 (5th Cir. 1980)). Accordingly, to the extent that Plaintiff has alleged a Fifth Amendment violation against these Defendants, who are neither the federal government nor agents thereof, his claim is non-cognizable. In any event, however, the clauses, under both the Fifth and Fourteenth Amendments, are textually and substantively identical. *See, e.g., Fraser v. Smith*, No. 08-10680, 2010 U.S. App. LEXIS 1315, at *15 n.10 (11th Cir. Jan. 21, 2010). Thus, the court construes Plaintiff's claims, brought under the Fifth Amendment's Due Process Clause, as claims brought under the Fourteenth Amendment's Due Process Clause.

of his rights under Alabama Code § 36-12-40 (Doc. #1 ¶¶ 25-27); (6) violation of his rights under Alabama Code § 36-12-41 (Doc. #1 ¶¶ 28-30); and (7) violation of his rights under Alabama Code § 40-10-120 (Doc. #1 ¶¶ 31-33).

### III.    STANDARD OF REVIEW

Defendants have challenged the sufficiency of Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6), which provides for dismissal of a complaint for failure to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). A court may dismiss a complaint under Rule 12(b)(6) if a plaintiff fails to provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 570 (2007). That is, if a plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Id.*

In deciding a Rule 12(b)(6) motion, the court must "accept all well-pleaded factual allegations in the complaint as true and construe the facts in a light most favorable to the non-moving party." *Dacosta v. Nwachukwa*, 304 F.3d 1045, 1047 (11th Cir. 2002) (citing *GJR Invs., Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1367 (11th Cir. 1998)). "[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal." *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003) (citing *Marsh v. Butler County*, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (en banc)). Further, "[a] complaint may not be dismissed because the plaintiff's claims do not support the legal theory he relies upon since the court must determine if the allegations provide for relief on *any* possible theory." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (emphasis in original). Nevertheless, conclusory allegations, unwarranted deductions of facts, or legal conclusions masquerading as facts will not

prevent dismissal. *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002); *see Kane Enters. v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir. 2003) ("[A] plaintiff must plead specific facts, not mere conclusional allegations, to avoid dismissal for failure to state a claim. We will thus not accept as true conclusory allegations or unwarranted deductions of fact.") (internal citations omitted); *Kirwin v. Price Commc'ns. Corp.*, 274 F. Supp. 2d 1242, 1248 (M.D. Ala. 2003) ("[A]lthough the complaint must be read liberally in favor of the plaintiff, the court may not make liberal inferences beyond what has actually been alleged."), *aff'd in part*, 391 F.3d 1323 (11th Cir. 2004).

### IV.   DISCUSSION

#### A.   Under Alabama State Law, Defendant Tuscaloosa County is Not Responsible for Tax Administration

Defendant Tuscaloosa County contends that it "has no authority over the issues raised by the Complaint. Consequently, the claims purportedly against Tuscaloosa County are due to be dismissed." (Doc. #9 at 1-2). In support of this argument, Defendant Tuscaloosa County cites to Alabama Code § 40-2-11, which provides in pertinent part:

> It shall be the duty of the Department of Revenue, and it shall have the power and authority, in addition to the authority now in it vested by law . . . [t]o have and exercise *general and complete supervision and control* of . . . the collection of all property . . . taxes for the state and counties, and of the enforcement of the tax laws of the state, and of the several county tax assessors and county tax collectors, *probate judges*, and each and every state and county official . . . with any duty in the enforcement of tax laws, to the end that all taxable property in the state shall be assessed and taxes shall be imposed and collected thereon in compliance with the law . . . .

ALA. CODE § 40-2-11(1). As the Alabama Code reveals, the counties lack supervisory control over the collection and administration of taxes throughout the state and with respect to the probate judges in particular.

Plaintiff's only response is a general statement that "Tuscaloosa County is a proper defendant in this action, because of policies, practices and procedure with respect to its administration and disbursement of tax excess is in fact done based upon race and or socio-economic class." (Doc. #13 ¶ 1). This statement, however, begs the question and assumes, without a plausible allegation, that Defendant Tuscaloosa County actively defied Alabama Code § 40-2-11, usurped supervisory control over tax administration, and conspired with Defendant McCollum to execute such a plan. Moreover, his response merely restates his initial allegation contained in the Complaint. (Doc. #1 ¶ 12).

Thus, to the extent that Plaintiff's complaint asserts causes of action against Defendant Tuscaloosa County for unconstitutionally or unlawfully withholding Plaintiff's tax sale excess or otherwise violating tax law, those claims, as they are presently pleaded, are due to be dismissed. *See Gaines v. Choctaw County Comm'n*, 242 F. Supp. 2d 1153, 1159 (S.D. Ala. 2003) (granting motion to dismiss because "the County has no supervisory authority over [state employees] and cannot be held liable for [the state employees' allegedly illegal actions]"). Specifically, Counts One, Two, Three, Four, and Seven implicate tax policy, procedure, and supervisory authority over matters which are exclusively vested with the Alabama Department of Revenue and delegated, in this case, to Defendant McCollum. Additionally, Counts Five and Six similarly fail as pleaded because Plaintiff alleges that Defendant Tuscaloosa County is in possession of certain public records concerning tax sales and their relevant excesses. From this allegation, Plaintiff claims that Defendant Tuscaloosa County unlawfully withheld access to the files. As stated, however, Defendant Tuscaloosa County is not responsible for maintaining such records; instead, the Alabama

Department of Revenue, in conjunction with its agents, including Defendant McCollum, would supervise such records, if at all. Thus, Counts Five and Six are similarly due to be dismissed as they are presently pleaded. In short, Plaintiff has not alleged a single act by Defendant Tuscaloosa County, executed through one of its agents, sufficient to impute liability.

In the Eleventh Circuit, "[a] district court is not required to grant a plaintiff leave to amend his complaint *sua sponte* when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested to amend before the district court." *Wagner v. Daewoo Heavy Industries Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (en banc). The Eleventh Circuit's decision in *Wagner* overruled its earlier decision in *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991), in which the court held that "[w]here a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." The *Wagner* rule is silent regarding its applicability to pro se litigants, and indeed, the Eleventh Circuit altogether avoided this issue. *Wagner*, 314 F.3d at 542 n.1 ("In this opinion, we decide and intimate nothing about a party proceeding pro se."). On four occasions since its decision in *Wagner*, however, the Eleventh Circuit, in unpublished opinions, has applied the *Bank* rule, as opposed to the *Wagner* rule, when a litigant proceeded pro se. *Van Taylor v. McSwain*, 335 Fed. App'x 32, 33 (11th Cir. 2009); *Clark v. Maldonado*, 288 Fed. App'x 645, 647 (11th Cir. 2008); *Case v. Riley*, 270 Fed. App'x 908, 910 n.5 (11th Cir. 2008); *Spear v. Nix*, 215 Fed. App'x 896, 902 (11th Cir. 2007); *see also Dexter v. Alabama*, No. 08-0427, 2008 U.S. Dist. LEXIS 57014, at *11 (S.D. Ala. July 24, 2008) (applying *Bank* instead of *Wagner* to pro se complaint).

Accordingly, although the court concludes that Plaintiff's allegations against Defendant Tuscaloosa County fail to state a claim, under *Bank*, Plaintiff is entitled to re-plead these allegations.

If Plaintiff is unable to cure the pleading defects identified by Defendant Tuscaloosa County, then Plaintiff's claims are due to be dismissed *with prejudice*.

**B.     Defendant McCollum is Entitled to Judicial Immunity as to Counts Two and Seven**

Judicial immunity defeats a § 1983 claim for money damages brought against a state court judge in either his official or individual capacity. *Sibley v. Lando*, 437 F.3d 1067, 1074) (11th Cir. 2005) (citing *Simmons v. Conger*, 86 F.3d 1080, 1084-85 (11th Cir. 1996)).[3] A judge's immunity "is not overcome by allegations of bad faith or malice . . . ." *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (citing *Pierson v. Ray*, 386 U.S. 547, 554 (1967)). Instead, a judge's immunity is "overcome in only two sets of circumstances. First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's official capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.* (citing *Forrester v. White*, 484 U.S. 219, 227-29 (1988); *Stump v. Sparkman*, 435 U.S. 349, 356-57, 360 (1978); *Bradley v. Fisher*, 12 Wall. 335, 351 (1872)). From these exceptions, the Eleventh Circuit has crafted the following two part test: "The first part of the test is whether the judge dealt with the plaintiff in a judicial capacity. If the judge was not dealing with the plaintiff in a judicial capacity, then there is no immunity. If the judge was dealing with the plaintiff in his judicial capacity, however, the second part of the test is whether the judge acted in the clear absence of all jurisdiction." *Simmons v. Conger*, 86 F.3d 1080, 1084-85 (11th Cir. 1996) (citing *Stump v. Sparkman*, 435 U.S. 349 (1978)).

---

[3] With respect to federal judges, the "doctrine of judicial immunity applies to both suits for damages and suits seeking injunctive and declaratory relief . . . ." *Jarallah v. Simmons*, 191 Fed. App'x 918, 920 (11th Cir. 2006) (citing *Bolin v. Story*, 225 F.3d 1234, 1242 (11th Cir. 2000)). Judicial immunity, however, does not shield state court judges against prospective injunctive relief. *Id.* (quoting *Pulliam v. Allen*, 466 U.S. 522 (1984)). In this case, Defendant McCollum is a state court judge and, accordingly, entitled to judicial immunity only with regard to Plaintiff's claims for money damages. Nevertheless, Plaintiff has not asserted claims requesting prospective injunctive relief against Defendant McCollum.

Regarding the first prong, the Eleventh Circuit explained that whether an act is "judicial" depends on the following factors: "(1) the act complained of constituted a normal judicial function; (2) the events occurred in the judge's chambers or in open court; (3) the controversy involved a case pending before the judge; and (4) the confrontation arose immediately out of a visit to the judge in his judicial capacity." *Sibley v. Lando*, 437 F.3d 1067, 1070 (11th Cir. 2005) (citing *Scott v. Hayes*, 719 F.2d 1562, 1565 (11th Cir. 1983)); *see also Rheuark v. Shaw*, 628 F.2d 297, 304-05 (5th Cir. 1980) ("In determining whether a particular act is a 'judicial' one, we must consider two factors: (1) 'whether it is a function normally performed by a judge,' and (2) 'whether [the parties] dealt with the judge in his judicial capacity.'") (quoting *Stump*, 435 U.S. at 362). As the Eleventh Circuit clarified, "the relevant inquiry is the 'nature' and 'function' of the act, not the act itself." *Sibley v. Ramirez*, No. 04-14555, 2005 U.S. App. LEXIS 29564, at *5 (11th Cir. Jan. 18, 2005) (quoting *Mireles*, 502 U.S. at 12-13).

In this case, Defendant McCollum clearly performed a judicial act. The act of withholding excesses from a tax sale absent the requisite statutory formalities constitutes an act over which Alabama probate judges have been granted jurisdiction. *See* ALA. CODE § 40-10-1. According to Plaintiff, the events giving rise to this lawsuit occurred in Defendant McCollum's chambers or at Defendant McCollum's courthouse. The controversy arose as a result of excesses held from the sale of land properly before the court. Finally, Plaintiff's complaint alleges improper actions arising out of his visit to the courthouse.

In Plaintiff's second response, he argues that a probate judge's function with respect to tax sales is "ministerial and not judicial in nature." (Doc. #13 ¶ 4). In support of this position, Plaintiff cites *Roach v. State*, 39 So. 685 (Ala. 1905). *Roach*, however, is inapposite to this case. In *Roach*, Albritton purchased several tracts of land at a tax sale. *Id.* at 685. Within the requisite statutory

9

period, however, a prior owner exercised his right of redemption against certain parcels of land sold. *Id.* Nevertheless, other tracts of land purchased by Albritton went unredeemed. *Id.* Accordingly, at the expiration of the redemption period, Albritton petitioned the probate judge to issue a tax deed in his favor. *Id.* The probate judge refused because Cooper had deposited money for the purpose of redemption. *Id.* Cooper executed his right of redemption within the statutory period. *Id.* at 685-86. Importantly, Cooper attempted to redeem only a portion of the land held by Albritton – several tracts remained even if Cooper redeemed. *Id.* at 686. The probate judge refused to issue a tax deed covering the remaining land, which no prior owner had attempted to redeem within the statutory period. *Id.* Thus, Albritton sought a writ of mandamus against the probate judge to compel the deed's issuance. *Id.*

Relevant to this case, the Alabama Supreme Court observed that "no judicial proceedings take place upon an application to redeem, the officer who receives the money and executes the certificate of redemption acts in a ministerial capacity . . . ." *Id.* at 687. From this language, Plaintiff presumably reasons that the Alabama Supreme Court has classified a probate judge's function, in general, as ministerial as opposed to judicial. However, that is an overly broad reading of *Roach*. Specifically, *Roach* merely suggests that the act of redemption is routine. Once a former landowner observes the requisite formalities necessary to effect redemption, then the right is complete without further judicial consideration. *Roach*, therefore, stands for the unremarkable proposition that, in the context of redemption, a probate judge must adhere to statutory requirements.

Nevertheless, Plaintiff's classification of a probate judge's function as ministerial does not defeat the conclusion that Defendant McCollum performed a judicial act. In particular, the administrative nature of the function becomes relevant only in two limited circumstances. First, when a litigant argues to extend judicial immunity to a court's support staff, the administrative nature

of the function is relevant. *See, e.g.*, *Scott v. Dixon*, 720 F.2d 1542, 1546 (11th Cir. 1983) (holding that a state court clerk is entitled to judicial immunity because he performs discretionary, as opposed to ministerial, tasks); *In re Lickman*, 304 B.R. 897, 903-05 (Bankr. M.D. Fla. 2004) (concluding that a judicial assistant and law clerk are entitled to judicial immunity because they perform discretionary, as opposed to ministerial, tasks). Second, as the Supreme Court explained in *Forrester v. White*, when a judge performs a task wholly unrelated to a pending case, such as hiring or firing a staff member, judicial immunity is unavailable. 484 U.S. 219, 230 (1988); *see also Henry v. Jefferson County Personnel Board*, 519 F. Supp. 2d 1171, 1183 n.11 (N.D. Ala. 2007) (Proctor, J.) (interpreting *Forrester* as standing for the limited proposition that administrative tasks, unrelated to *pending cases*, are not subject to judicial immunity), *aff'd*, 252 Fed. App'x 308 (11th Cir. 2007).

Neither exception applies to this case. First, Plaintiff sued Defendant McCollum as opposed to a member of his staff; therefore, the judicial adjunct analysis is irrelevant. Second, although the dispensation of excess funds is probably more ministerial than judicial (at least in this circumstance), regarding Plaintiff, the outlay concerned a matter properly before Defendant McCollum and subject to ongoing judicial oversight. Thus, *Forrester* is inapplicable because an actual case involving Plaintiff yielded the withheld funds. Accordingly, although a task's administrative nature is relevant in certain circumstances, this case does not present one of them.

Regarding the second prong of the judicial immunity test, the Eleventh Circuit concluded that absence of jurisdiction requires "a complete absence of *subject matter jurisdiction*." *Dykes v. Hosemann*, 776 F.2d 942, 947 (11th Cir. 1985) (emphasis added). The Supreme Court offered the following example to distinguish between a judge acting without jurisdiction, which undercuts immunity, and a judge acting in excess of jurisdiction, which does not affect immunity:

> [I]f a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune.

*Stump*, 435 U.S. at 357 n.7 (citing *Bradley*, 13 Wall. at 352).

Importantly, "the scope of a judge's jurisdiction must be construed broadly when issues of immunity are implicated, and '[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" *Conard v. Evans*, 193 Fed. App'x 945, 948 (11th Cir. 2006) (quoting *Stump*, 435 U.S. at 356-57).[4] "Thus, a judge is immune from suit even when [his] exercise of authority is flawed by 'grave procedural errors.'" *Id.* (quoting *Stump*, 435 U.S. at 359).

In *Stegeman v. Georgia*, the Eleventh Circuit considered whether a probate judge was entitled to judicial immunity. 290 Fed. App'x 320, 323 (11th Cir. 2008). In *Stegeman*, the court keyed its inquiry to the scope of Georgia's jurisdictional grant to the probate courts. *Id.* Finding that Georgia statutory law afforded the probate judge jurisdiction over the matter upon which she ruled, the Eleventh Circuit held that the probate judge was entitled to judicial immunity. *Id.* In this case, therefore, whether Defendant McCollum acted within the scope of his jurisdiction depends on Alabama statutory law. According to the Alabama Code:

> The probate court of each county may order the sale of lands therein for the payment of taxes assessed on the lands, or against the owners of the lands, when the tax collector shall report to the court that he or she or the holder of a tax lien . . . was unable to collect the taxes assessed against the land, or any mineral, timber or water right  or

---

[4] The Eleventh Circuit's *Conard* decision – like the *Stegeman* decision cited below – is an unpublished opinion and, therefore, has no precedential value. The court does find both *Conard* and *Stegeman* persuasive, however.

>   special right, or easement therein, or the owner thereof, without a sale
>   of the land.

ALA. CODE § 40-10-1. Indeed, as the Alabama Supreme Court explained, "the authority of the Probate Court is purely statutory, and cannot arise at all except upon the collector's report that a sale of the land is necessary for the collection of the taxes. By the plain language of the statute this report of the collector is made the essential prerequisite of jurisdiction, and an order of sale without it is a mere nullity." *Messer v. Birmingham*, 10 So. 2d 760, 762 (Ala. 1942) (citations omitted); *see also Anderson v. Doe*, 246 Ala. 398, 403 (1945) ("The power of the probate court in the sale of land for collection of unpaid taxes is not in the exercise of its general jurisdiction but that of a special or limited jurisdiction . . . .") (citations omitted).

Based on Plaintiff's allegations, the jurisdictional prerequisites contained in Alabama Code § 40-10-1 are satisfied. Critically, Plaintiff's complaint acquiesces to the tax assessments and their respective deficiencies. (Doc. #1 ¶ 5). Accordingly, the exercise of Defendant McCollum's authority to order the parcels' sales to satisfy the outstanding state taxes squarely fits within the probate court's jurisdiction. It follows, therefore, that his continued retention of the tax sale excess as well as his supervision over Plaintiff's attempt to redeem fit within the probate court's jurisdiction.

Because both prongs of the two-part test are met, Defendant McCollum is entitled to judicial immunity against Plaintiff's causes of action for monetary damages. Specifically, Count Two, which requests compensatory damages against Defendant McCollum, is due to be dismissed. Additionally, Count Seven, insofar as it alleges due process violations against Defendant McCollum, is due to be dismissed. Although Plaintiff claims in Count Seven a violation of Alabama Code § 40-10-120, he also claims a constitutional violation. (Doc. #1 ¶ 32). Specifically, Plaintiff requests monetary compensation for an allegedly unconstitutional administration of Alabama Code § 40-10-120. The

13

court, therefore, construes Count Seven as a request for relief brought pursuant to § 1983, *i.e.*, the only mechanism for requesting monetary relief for a constitutional violation. Because Defendant McCollum is entitled to federal judicial common law immunity, he is similarly insulated against Count Seven's federal claim.

Defendant McCollum's entitlement to federal common law judicial immunity, however, does not insulate him against a cause of action brought under state law. Thus, to the extent that Count Seven alleges a violation of Alabama statutory law, Defendant McCollum's claim to federal judicial immunity is irrelevant. Nevertheless, Alabama common law recognizes judicial immunity against state law causes of action, and the Alabama Supreme Court has patterned the defense after federal law. *See, e.g.*, *Ex parte City of Greensboro*, 948 So. 2d 540, 542 (Ala. 2006); *City of Bayou La Batre v. Robinson*, 785 So. 2d 1128, 1132-33 (Ala. 2001). In this case, therefore, because Defendant McCollum is entitled to federal immunity, he is similarly entitled to state immunity. Accordingly, Plaintiff's Count Seven, insofar as it requests relief pursuant to Alabama Code § 40-10-120, is due to be dismissed.[5]

**C.     The Court's Jurisdiction Over Plaintiff's Takings Clause Claim is Uncertain**

"It is by now axiomatic that the inferior federal courts are courts of limited jurisdiction." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999). A federal court, therefore, is "obligated to inquire into subject-matter jurisdiction *sua sponte* whenever it may be lacking." *Cadet v. Bulger*, 377 F.3d 1173, 1179 (11th Cir. 2004). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." FED. R. CIV. P. 12(h)(3). In this

---

[5] Importantly, Plaintiff is not entitled to re-plead his claims against Defendant McCollum. Based on Plaintiff's allegations, the requirements for judicial immunity, under both federal and state law, are satisfied. Immunity is inapplicable only if Plaintiff retracts – as opposed to qualifies or clarifies – his allegations. Even applying the *Bank* rule, however, Plaintiff is entitled only to re-plead incomplete allegations, not those which are foreclosed as a matter of law.

case, the court is uncertain whether it has jurisdiction over Plaintiff's Takings Clause claim, contained in Counts Two and Seven.

According to the Eleventh Circuit, "a Fifth Amendment just compensation claim is not ripe until the landowner has pursued the available state procedures to obtain just compensation." *Eide v. Sarasota County*, 908 F.2d 716, 721 (11th Cir. 1990) (citing *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 193-95 (1985)). Alabama recognizes inverse condemnation actions as the appropriate mechanism for pursuing compensation in response to supposed takings. *See* ALA. CODE § 18-1A-32 (statutory inverse condemnation provision). The Eleventh Circuit has repeatedly held that a litigant must avail himself of a state law inverse condemnation action, to the extent that one is available, as an essential precondition to filing a federal lawsuit that alleges an unconstitutional taking. *See, e.g.*, *Busse v. Lee County*, 317 Fed. App'x 968, 972 (11th Cir. 2009) (citing *Reahard v. Lee County*, 30 F.3d 1412, 1417 (11th Cir. 1994)).

In the instant case, Plaintiff has not pleaded that he brought an inverse condemnation action in state court against these Defendants. Moreover, as the Alabama Supreme Court noted in the context of municipal defendants, "an inverse condemnation claim must 'be presented to the clerk for payment within two years from the accrual of said claim or be barred.'" *McClendon v. Boaz*, 395 So. 2d 21, 24 (Ala. 1981) (quoting ALA. CODE § 11-47-23). Plaintiff has not pleaded that he availed himself of these procedural outlets. Accordingly, because Plaintiff has not pleaded that he first pursued appropriate relief in state court, his Takings Clause claim, as presented, is unripe, and this court may be without jurisdiction to consider it.[6] *See Beavers v. A.O. Smith Electrical Products Co.,*

---

[6]The court expresses no view whatsoever as to the underlying merits of Plaintiff's potential inverse condemnation action against Defendants.

265 Fed. App'x 772, 779 (11th Cir. 2008) ("The plaintiffs drafted the complaint and were responsible for alleging the proper jurisdictional facts."); *see also Brennan v. Roman Catholic Diocese of Syracuse N.Y., Inc.*, 322 Fed. App'x 852, 857 (11th Cir. 2009) ("The judicial power of the federal courts is restricted to cases and controversies. The case or controversy requirement of Article III includes a ripeness requirement [that] prevents the courts, through the avoidance of premature adjudication, from entangling themselves in abstract disagreements.") (citations and internal quotation marks omitted).

Because this error amounts to a pleading deficiency, Plaintiff, pursuant to the *Bank* rule described above, is entitled to re-plead his Takings Clause claim against Defendants Tuscaloosa County and McCollum. Specifically, if Plaintiff has administratively exhausted his remedies under state law, as required by the Eleventh Circuit, then that fact must be alleged in an amended complaint. Otherwise, if Plaintiff's remedies are unexhausted, then the court is without jurisdiction to consider his claim.

## V. CONCLUSION

For the above reasons, Defendants' Motion is due to be granted in part and denied in part. Specifically, Defendant Tuscaloosa County's motion to dismiss Count One, which alleges an access to court claim, is due to be denied without prejudice, subject to Plaintiff's opportunity to re-plead. Count Two, insofar as it alleges a due process violation against Defendant McCollum, is due to be dismissed with prejudice, but Defendants' motion to dismiss Count Two, insofar as it alleges a Takings Clause violation against Defendants Tuscaloosa County and McCollum and a due process violation against Defendant Tuscaloosa County, is due to be denied without prejudice, subject to Plaintiff's opportunity to re-plead. Defendant Tuscaloosa County's motion to dismiss Count Three, which alleges a Fourteenth Amendment due process and equal protection violation, is due to be

denied without prejudice, subject to Plaintiff's opportunity to re-plead. Defendant Tuscaloosa County's motion to dismiss Count Four, which alleges a violation of Alabama Code § 40-10-28, is due to be denied without prejudice, subject to Plaintiff's opportunity to re-plead. Defendant Tuscaloosa County's motion to dismiss Count Five, which alleges a violation of Alabama Code § 36-12-40, is due to be denied without prejudice, subject to Plaintiff's opportunity to re-plead. Defendant Tuscaloosa County's motion to dismiss Count Six, which alleges a violation of Alabama Code § 36-12-41, is due to be denied without prejudice, subject to Plaintiff's opportunity to re-plead. Defendant Tuscaloosa County's motion to dismiss Count Seven, insofar as it alleges a violation of Alabama Code § 40-10-120, is due to be denied without prejudice, subject to Plaintiff's opportunity to re-plead. Defendants' motion to dismiss Count Seven, insofar as it alleges a Takings Clause violation, is due to be denied without prejudice, subject to Plaintiff's opportunity to re-plead. Finally, Count Seven, insofar as it alleges due process and state statutory violations against Defendant McCollum, is due to be dismissed with prejudice.[7]

An order consistent with this Memorandum Opinion will be entered contemporaneously herewith.

---

[7] In his brief, Defendant McCollum asserted a claim to Eleventh Amendment immunity. Because the State of Alabama has not waived its sovereign immunity, ALA. CONST. art. I, § 14, the dispositive issue is whether Defendant McCollum is an "arm of the state." *See Manders v. Lee*, 338 F.3d 1304, 1308-09 (11th Cir. 2003) (en banc). On two occasions, the Middle District of Alabama has concluded that Alabama's probate judges are not state officers for Eleventh Amendment purposes. *See Scott v. Estes*, 60 F. Supp. 2d 1260, 1272-73 (M.D. Ala. 1999) (Thompson, J.) (concluding that an Alabama probate judge is a county officer); *Johnson v. Waters*, 970 F. Supp. 991, 1001-02 (M.D. Ala. 1997) (Carroll, J.) (same); *see also Hawkins v. Jefferson County*, 169 So. 720, 723 (Ala. 1936).

On the other hand, the Eleventh Circuit has emphasized the functional nature of the Eleventh Amendment inquiry and observed that officers may wear different "hats" for the purpose of this analysis. *Abusaid v. Hillsborough County Bd. of County Comm'rs*, 405 F.3d 1298, 1304 (11th Cir. 2005). At this stage, and based on the briefs, the court is unable to conclude with certainty that Defendant McCollum is entitled to Eleventh Amendment immunity. And in any event, the court dismisses the claims against him on surer-footed grounds without having to reach unnecessarily this issue. The court, therefore, expresses no view whatsoever regarding his alleged entitlement to Eleventh Amendment immunity.

**DONE** and **ORDERED** this      8th       day of February, 2010.

_____

      **R. DAVID PROCTOR**
      UNITED STATES DISTRICT JUDGE