FILED

2010 Jul-20  PM 02:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | | |
|---|---|---|
| **LORENZO WILSON,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 7:09-CV-2267-RDP** |
| | } | |
| **TUSCALOOSA COUNTY, et al.,** | } | |
| | } | |
| **Defendants.** | } | |

## <u>MEMORANDUM OPINION</u>

This case is before the court on Plaintiff's Motion for Leave to Amend the Complaint (Doc. #19), filed March 5, 2010.  For the following reasons, the Motion is due to be granted.

## I.      PROCEDURAL HISTORY

### A.      Plaintiff's Initial Complaint and the Motion to Dismiss

On November 6, 2009, Plaintiff filed his initial complaint against Defendants Tuscaloosa County and W. Hardy McCollum, in his official capacity as probate judge of Tuscaloosa County. (Doc. #1).  Arising from an allegedly unlawful retention of tax sale proceeds, Plaintiff's claims included the following: (1) a freedom of speech and to petition the government claim under the First Amendment against Defendant Tuscaloosa County; (2) a Takings Clause claim under the Fifth Amendment against Defendants Tuscaloosa County and McCollum; (3) a due process claim under the Fourteenth Amendment against Defendant Tuscaloosa County; (4) an Equal Protection Clause claim under the Fourteenth Amendment against Defendant Tuscaloosa County; (5) a claim for tax sale proceeds under Alabama Code § 40-10-28 against Defendant Tuscaloosa County; (6) two claims regarding the inspection of public records under Alabama Code §§ 36-12-40 and 36-12-41 against

Defendant Tuscaloosa County; and (7) a claim for redemption of real property under Alabama Code § 40-10-120 against Defendants Tuscaloosa County and McCollum.  (Doc. #5-10).

On Defendants' motion, and after full briefing, the court partially dismissed Plaintiff's claims. First, the court dismissed with prejudice Plaintiff's claims against Defendant McCollum on judicial immunity grounds.  (Doc. #18 at 1).  Second, the court, relying principally on Alabama Code § 40-2-11, ordered Plaintiff to re-plead his allegations of unconstitutional and unlawful tax collection, retention, and disbursement.  (Doc. #17 at 5-8).  Specifically, under Alabama Code § 40-2-11, the Alabama Department of Revenue is "vested by law . . . [t]o have and exercise general and complete supervision and control of . . . probate judges . . . ."  Because Plaintiff's claims arose primarily as a result of alleged conduct by Defendant McCollum, a probate judge, the court concluded that Defendant Tuscaloosa County, based on the bare pleadings, was not necessarily responsible for the wrongful conduct alleged.  (Doc. #17 at 7).  The court, however, construed this shortcoming as a pleading defect rather than a substantive error based on sufficient factual allegations.  (Doc. #17 at 7).  Accordingly, the court ordered Plaintiff to include, if available, allegations that suggest Defendant Tuscaloosa County's liability is fairly traceable to the decisions made by Defendant McCollum.  (Doc. #17 at 7-8).  Finally, the court questioned whether jurisdiction exists over Plaintiff's Takings Clause claim.  (Doc. #17 at 14-16).  Consistent with established Eleventh Circuit caselaw, federal jurisdiction over Takings Clause claims is absent unless Plaintiff had exhausted available state law remedies.  *See, e.g.*, *East-Bibb Twiggs Neighborhood Ass'n v. Macon Bibb Planning & Zoning Comm'n*, 896 F.2d 1264, 1266 (11th Cir. 1989) ("[T]hey had not exhausted the process leading toward 'just compensation' because they failed to seek compensation through state law procedures.") (citation omitted).  Because Plaintiff had not pleaded that he availed himself of

2

an inverse condemnation action, the court ordered Plaintiff to re-plead and include, if applicable, facts establishing exhaustion.  (Doc. #17 at 16).

###    B.    Plaintiff's Proposed Amended Complaint

On March 5, 2010, Plaintiff filed his Motion for Leave to Amend along with his proposed Amended Complaint. (Doc. #19).  In his Amended Complaint, Plaintiff recast his allegations against Defendant McCollum.  Instead of asserting claims against him in his official capacity as probate judge of Tuscaloosa County, Plaintiff asserted state and federal law claims against him in his individual capacity and official capacity as Chairman of the Tuscaloosa County Commission.  (Doc. #19-1 at 4-7).

According to the Amended Complaint, Defendant McCollum, while serving as probate judge and at all times relevant to the events of this lawsuit, simultaneously served as Chairman of the Tuscaloosa County Commission.  (Doc. #19-1 at 1).  Presumably, therefore, Plaintiff contends that Defendant McCollum's dual capacity overrides the court's expressed concerns regarding the Alabama Code and the appropriate party to this litigation.

Plaintiff included the following claims in his amended complaint: (1) against Defendants Tuscaloosa County and McCollum, a Takings Clause claim; (2) against Defendant McCollum, a due process claim; (3) against Defendant McCollum, an equal protection claim; (4) against Defendant Tuscaloosa County, a claim for tax excess under Alabama Code § 40-10-28; and (5) against Defendants Tuscaloosa County and McCollum, a claim for unconstitutional application of Alabama Code § 40-10-120.  (Doc. #19-1 at 7-10).

After Plaintiff filed his Motion for Leave to Amend, the court entered a Show Cause Order, which required Defendants to respond, if at all, to Plaintiff's Motion no later than March 26, 2010.

(Doc. #20). Defendants filed their response on March 22, 2010. (Doc. #21). Plaintiff filed his reply on March 30, 2010. (Doc. #22). Accordingly, the Motion has been fully briefed and is now properly under submission.

## II.    DISCUSSION

### A.    Defendant Tuscaloosa County as a Proper Party

As mentioned, the court, in light of the Motion to Dismiss, expressed concern that Defendant Tuscaloosa County is an improper party in this case. (Doc. #17 at 5-8). The reservation stemmed from Alabama Code § 40-2-11(1), which vests the Alabama Department of Revenue with "the power and authority . . . [t]o have and exercise general and complete supervision and control of . . . probate judges . . . ." This power allocation casts doubt on Defendant Tuscaloosa County's liability because a "local government may be held liable under § 1983 only for acts for which it is actually responsible, 'acts which the [local government] has officially sanctioned or ordered.'" *Turquitt v. Jefferson County, Ala.*, 137 F.3d 1285, 1287 (11th Cir. 1998) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80 (1986)). To overcome this clear supervisory assignment to the Alabama Department of Revenue, and thereby charge liability to Defendant Tuscaloosa County, Plaintiff alleges – accurately, according to Defendants – that Defendant McCollum, while serving as probate judge, simultaneously served as Chairman of the Tuscaloosa County Commission. (Doc. #19-1 at 1).

Nevertheless, a simple nexus between the municipality and the alleged wrongdoer is inadequate, on its own, to establish liability. To hold a municipality liable under § 1983, *respondeat superior* is insufficient; rather, Plaintiff "must show that the constitutional deprivation resulted from a custom, policy, or practice of the municipality." *Wideman v. Shallowford Cmty. Hosp., Inc.*, 826

4

F.2d 1030, 1032 (11th Cir. 1987) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978);

*Bradberry v. Pinellas County*, 789 F.2d 1513, 1515 (11th Cir. 1986)); *see also Grech v. Clayton*

*County, Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003) ("[A plaintiff must] identify either (1) an

officially promulgated county policy or (2) an unofficial custom or practice of the county shown

through the repeated acts of a final policymaker for the county.") (citing *Monell*, 436 U.S. at 690-91;

*Brown v. Neumann*, 188 F.3d 1289, 1290 (11th Cir. 1999)).  For this purpose, a "policy is a decision

that is officially adopted by the municipality, or created by an official of such rank that he or she

could be said to be acting on behalf of the municipality.  A custom is a practice that is so settled and

permanent that it takes on the force of law."  *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489

(11th Cir. 1997) (citing *Monell*, 436 U.S. at 690-91; *Brown v. City of Fort Lauderdale*, 923 F.2d

1474, 1479-80 (11th Cir. 1991)).

At this stage, the court concludes that Plaintiff has stated a cognizable claim.  According to

Plaintiff's allegations, Defendant McCollum, as Chairman of the Tuscaloosa County Commission,

implemented Defendant Tuscaloosa County's policy or custom of violating individuals' various

constitutional rights:

> The above actions and omissions and conduct of the defendant
> Tuscaloosa County by and [through] defendant W. Hardy McCollum
> Chairman of Tuscaloosa County constitute discriminatory practices,
> policies[,] and procedures of Tuscaloosa County that has deprive[d]
> the Plaintiff Lorenzo M. Wilson and others of African ancestry and
> those of lower socio-economic class and[/]or status in Tuscaloosa
> County, Alabama of due process of law and denial of just
> compensation in the taking of their property by Tuscaloosa County.

(Doc. #19-1 ¶ 14).  Plaintiff makes similar allegations regarding denial of equal protection under the

law.  (Doc. #19-1 ¶¶ 17, 23).

In this sense, Plaintiff alleges claims against Defendant McCollum in his capacity as Chairman of the Tuscaloosa County Commission, not as a probate judge:

> The Defendant W. Hardy McCollum in his position as Chairman of Tuscaloosa County Commission act[ed] to impede, deny, delay and deprive Citizens of Tuscaloosa[] County money from tax sales lawfully due to landowners and adversely affect their rights of redemption, by converting tax sales excess into county funds without any legal process and thereby unjustly enriching Tuscaloosa County.

(Doc. #19-1 ¶ 9). By suing Defendant McCollum in this alternative capacity, Plaintiff claims that Defendant McCollum acted not as probate judge, in which case he would be entitled to judicial immunity, but as Chairman of the Tuscaloosa County Commission. In this regard, Plaintiff's suggested connection between the tax sale, Defendant McCollum, and Defendant Tuscaloosa County is not necessarily implausible. Accordingly, by pleading a link between the alleged constitutional deprivations and Defendant Tuscaloosa County Commission, Plaintiff has overcome Defendants' objection to his first Complaint.

Defendants' only response to this allegation is that "Plaintiff is unable to identify any authority by which the Chairman of the County Commission (and by extension, the County itself) exercises any supervisory control over the collection or administration of taxes." (Doc. #21 at 2). This response, however, ignores two components of Plaintiff's proposed Amended Complaint. First, Plaintiff asserts that Defendant Tuscaloosa County has adopted a policy or custom of unconstitutional discrimination. Second, Plaintiff asserts that Defendant McCollum, as Chairman of the Tuscaloosa County Commission, usurped authority properly assigned to a probate judge and implemented Defendant Tuscaloosa County's purported unconstitutional customs or policies. These

6

two premises may be false – but taken together they are sufficient as a matter of pleading purposes to state a claim under § 1983 against a municipality.[1]

### B.       Plaintiff's Takings Clause Claim

In the previously entered Memorandum Opinion, the court observed that "because Plaintiff has not pleaded that he first pursued appropriate relief in state court, his Takings Clause claim, as presented, is unripe, and this court may be without jurisdiction to consider it."  (Doc. #17 at 15). Specifically, as explained in the Memorandum Opinion, "[t]he Eleventh Circuit has repeatedly held that a litigant must avail himself of a state law inverse condemnation action, to the extent that one is available, as an essential precondition to filing a federal lawsuit that alleges an unconstitutional taking."  (Doc. #17 at 15).  As a precondition to an inverse condemnation action, the Alabama Supreme Court "noted in the context of municipal defendants [that] an inverse condemnation claim must be presented to the clerk for payment within two years from the accrual of said claim or be barred."  (Doc. #17 at 15) (citation omitted).  Based on these principles and in light of the Amended Complaint, the court concludes that Plaintiff has failed to allege sufficient facts to invoke federal jurisdiction over his Takings Clause claim.

It is axiomatic that "[t]he doctrine of ripeness denies subject matter jurisdiction to claims which are before the court prematurely."  *Burgess v. Holmes County Bd. of County Comm'rs*, No.

---

[1]To be certain, however, Plaintiff's claims present significant questions of fact: (1) whether Defendant Tuscaloosa County, indeed, adopted a policy or employed a custom of violating constitutional rights; (2) whether Defendant McCollum actually was motivated to take the allegedly unconstitutional actions in order to further the supposed policy or custom; and (3) whether Defendant McCollum executed the relevant actions in his capacity as Chairman of the Tuscaloosa County Commission.

The court notes these issues as non-exhaustive questions contained in the proposed Amended Complaint.  In any event, contrary to Defendants' suggestion, the court is unable to resolve these factual matters based solely on the pleadings.  Discovery is necessary to assess their veracity.  Plaintiff, therefore, has alleged facts sufficient, at the very least, to cure the pleading defect raised in the Motion to Dismiss.

10-81, 2010 U.S. Dist. LEXIS 55466, at *3 (N.D. Fla. June 7, 2010) (citing *Nat'l Adver. Co. v. City of Miami*, 402 F.3d 1335, 1339 (11th Cir. 2005)).  "The ripeness requirement as applied to inverse condemnation actions involves a determination both that a defendant's action is final, or complete, and that the plaintiff has exhausted [his] state court remedies . . . ." *Bensch v. Metro. Dade County*, 952 F. Supp. 790, 795 (S.D. Fla. 1996).  That is, to ripen a Takings Clause claim, a litigant must overcome two barriers: (1) "the final decision hurdle" and (2) "the just compensation hurdle." *Reahard v. Lee County*, 30 F.3d 1412, 1415 (11th Cir. 1994) (citation omitted); *see also Eide v. Sarasota County*, 908 F.2d 716, 723 (11th Cir. 1990) ("A just compensation claim is only ripe when there has been a final decision and all state procedures for just compensation have been utilized.") (citing *Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 196-200 (1985)).

In this case, only the just compensation hurdle is seriously at issue.  As the Supreme Court held in *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, "the State's action in not 'complete' in the sense of causing a constitutional injury 'unless or until the state fails to provide an adequate postdeprivation remedy for the property loss.'" 473 U.S. at 195 (quoting *Hudson v. Palmer*, 468 U.S. 517, 532 n.12 (1984)).   And as the Eleventh Circuit explained, absent exhaustion, a plaintiff must establish "that the state law provides him no process for obtaining just compensation (such as an action for inverse condemnation) or that the state law appears to provide such process, but due to state court interpretation, the process is inadequate."  *Agripost, Inc. v. Miami-Dade County*, 195 F.3d 1225, 1331 (11th Cir. 1999).

Before filing this lawsuit, Plaintiff initiated state court proceedings.  In his proposed Amended Complaint, Plaintiff describes the previous state court action:

> Prior to bringing this suit in Federal Court the Plaintiff, Lorenzo M. Wilson[,] attempted to use State Court proceedings by filing a Petition Of Mandamus in the Circuit Court of Tuscaloosa County on July 28, 2008 Case No. CV-08-784 and the Circuit Court of Tuscaloosa County refused to hear Plaintiff['s] petition or to grant a hear[ing] or to rule or in any manner address the claims put before the State Courts of Alabama.  And only after 17 months of the State Court of Tuscaloosa County['s] refusal to hear or address my petition and the defendants['] refusal to pay the money I was due did I file this suit in Federal Court because I have no other meaningful remedy at law.

(Doc. #19-1 ¶ 3).   Critically, Plaintiff's proposed Amended Complaint contains none of the allegations delineated by this court as essential to ripening his Takings Clause claim.  First, Plaintiff has not pleaded that he first presented his claim to the Clerk of the County or that he pursued an inverse condemnation action.   Second, a mere allegation that he filed a petition for writ of mandamus, without more, is insufficient to establish that he previously pursued the requisite state court action – namely, an inverse condemnation proceeding.   Third, attached as Exhibit E to Plaintiff's Motion for Partial Summary Judgment, which this court administratively terminated pending resolution of the pleading issues, is a copy of Plaintiff's petition for writ of mandamus filed in the Circuit Court of Tuscaloosa County.  (Doc. #14 at 16-24).  Plaintiff's filed petition, however, does not contain a request for just compensation; rather, consistent with Alabama law, the petition requests, *inter alia*, the probate judge to relinquish funds to which Plaintiff is supposedly entitled.

Under Alabama law, however, Plaintiff has an adequate remedy.  As the Middle District of Alabama has explained, "Alabama state law provides that 'when the State takes property without initiating a condemnation action and without paying just compensation to the property owner, the property owner has a cause of action for inverse condemnation, by which he can recover just compensation for the taking.'  Obviously, there is an adequate remedy under state law for an

9

aggrieved plaintiff." *Madison v. Ala. Dep't of Transp.*, No. 06-199, 2007 U.S. Dist. LEXIS 34541, at *5 (M.D. Ala. May 10, 2007) (quoting *State v. Armstrong*, 779 So. 2d 1211, 1214 (Ala. 2000)). Accordingly, because Alabama law affords Plaintiff an opportunity to recover compensation for the allegedly unconstitutional taking and Plaintiff has not yet pursued this procedure, his Fifth Amendment Takings Clause claim is unripe.

Moreover, even if Plaintiff's mandamus petition is a valid substitute for an inverse condemnation proceeding, he did not meaningfully pursue his requested relief. As Defendants clarified, Plaintiff has "neglect[ed] to acknowledge that [the] complaint was dismissed for his failure to serve a summons and complaint on the defendants in" the state court case. (Doc. #21 at 2). Indeed, according to the final order from the Circuit Court of Tuscaloosa County, Plaintiff's case was dismissed for failure to prosecute because he "had not perfected service on any of the defendants . . . ." (Doc. #21-1).

In response, Plaintiff claims only that the state court refused to hear his lawsuit. (Doc. #19-1 ¶ 3). At best, however, his allegation suggests futility in pursuing his state law remedies. But the futility defense "applies to the final decision hurdle, not to the just compensation hurdle. There is no futility exception to the just compensation hurdle." *Romero v. Watson*, No. 08-217, 2009 U.S. Dist. LEXIS 43535, at *28 (N.D. Fla. May 13, 2009) (citing *Williamson*, 473 U.S. at 194-95). Plaintiff's Takings Clause claim is unripe and, therefore, due to be dismissed.

## III.    CONCLUSION

The proposed Amended Complaint has cured the pleading defects outlined in the court's Memorandum Opinion; accordingly, Plaintiff's Motion for Leave to Amend is due to be granted. Nevertheless, Plaintiff's claims under the Fifth Amendment's Takings Clause are unripe and due to

10

be dismissed without prejudice.  A separate order consistent with this Memorandum Opinion will

be entered contemporaneously herewith.

        **DONE** and **ORDERED** this    20th    day of July, 2010.

                                   **R. DAVID PROCTOR**
                                   UNITED STATES DISTRICT JUDGE