FILED

2011 Oct-11  PM 04:24
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| **LORENZO M. WILSON,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 7:09-CV-2267-RDP** |
| | } | |
| **TUSCALOOSA COUNTY, et al.,** | } | |
| | } | |
| **Defendants.** | } | |

## <u>MEMORANDUM OPINION</u>

This case is before the court on Defendants' Motion for Summary Judgment (Doc. # 41) and Plaintiff's Motion for Partial Summary Judgment (Doc. # 42), both of which were filed on April 25, 2011.  The Motions have been fully briefed.  (Docs. # 48, 49, and 50).

Having considered the briefs and evidentiary submissions, the court finds that Defendants' motion, which seeks dismissal of Plaintiff's Equal Protection Clam, is due to be granted and Plaintiff's motion is due to be denied for the reasons set out below.  However, as there are other claims Plaintiff has asserted in this case that are not addressed in Defendants' motion, this case shall continue with respect to those other claims.[1]

---

[1] Although Defendants move for summary judgment for the entirety of Plaintiff's complaint, the court can only construe their motion as one for partial summary judgment because there are other claims remaining in this case that are not addressed in Defendants' motion: (1) a due process claim under § 1983; (2) a claim for tax excess under Alabama Code § 40-10-28 against the County; and (3) a claim for unconstitutional application of Alabama Code §40-10-120 against both Defendants.  Thus, while Defendants inexplicably insist that Plaintiff's only remaining claim is for equal protection and thus move for summary judgment only on this claim (Doc. # 41-1 at 3), that is simply not the case.

I.      **BACKGROUND**

Plaintiff's claims arise from Defendants' alleged unlawful retention of his tax sale proceeds.[2] Defendants moved to dismiss Plaintiff's original complaint and the court concluded in its February 8, 2010 memorandum opinion that several of Plaintiff's claims failed to state a claim; however, because Plaintiff is proceeding *pro se*, Plaintiff was entitled to re-plead his allegations.  (Doc. # 17 at 7); *see Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991); *see also Taylor v. McSwain*, 335 F. App'x 32, 33 (11th Cir. 2009) (*Bank* still applies to *pro se* litigants).  Pursuant to the court's order on Defendants' motion to dismiss (Doc. # 18), Plaintiff timely filed a motion for leave to amend his complaint (Doc. # 19) and submitted a proposed amended complaint (Doc. # 19-1).  On July 20, 2010, the court granted Plaintiff's motion for leave to amend its complaint, concluding that Plaintiff's proposed amended complaint cured (at least most of) the pleading defects outlined in the court's memorandum opinion.  (Doc. # 25).  However, the court dismissed without prejudice Plaintiff's claims under the Fifth Amendment's Takings Clause because they were not ripe.  (Docs. # 24 at 7-11 and 25).

On August 16, 2010, Plaintiff filed his amended complaint alleging three claims for relief: (1) claims under 42 U.S.C. § 1983 against Defendant McCollum for his discrimination against Plaintiff and others based on race and socioeconomic status in violation of the Due Process and Equal Protection Clauses; (2) a claim for tax excess against Defendant Tuscaloosa County ("the County") under Alabama Code § 40-10-28; and (3) a claim for unconstitutional application of

---

[2] Plaintiff's allegations are more fully set forth in the court's February, 8, 2010 memorandum opinion.  (*See* Doc. # 17).

2

Alabama Code § 40-10-120 against the County and McCollum.  (Doc. # 28 at 6-9).  Plaintiff's claims against McCollum are proper only if they are asserted against him in his capacity as Chairman of the Tuscaloosa County Commission.  (Doc. # 24 at 5-6).

Defendants moved for summary judgment (Doc. # 41) and Plaintiff moved for partial summary judgment.  (Doc. # 42).  Defendants contend that there is no genuine issue of material fact and they are thus entitled to judgment as a matter of law.  (Doc. # 40).  In their memorandum in support of their motion, Defendants declare that Plaintiff's only remaining claim is his Equal Protection Clause claim.  (Doc. # 41-1 at 3).  They argue primarily that Plaintiff cannot establish municipal liability as to the County.  Defendants rely on McCollum's affidavit, which they contend establishes that McCollum, as the Chairman of the County Commission ("Chairman"), is not a final policymaker for the County.  (*Id.*, Ex. A).  McCollum states that, in his role as Chairman, he has "absolutely no authority or control over the policies, practices or procedures of the Office of the Probate Judge of Tuscaloosa County" and has no "authority to enact policies, procedures, or practices within the Office of the Probate Judge."  (*Id.*)  Additionally, McCollum states that one of his only duties in the County is to cast a "tie [breaking] vote" among the four county commissioners. (*Id.*)  Defendants contend that the Alabama Department of Revenue, not the County or the Chairman, has the "power and authority . . . [t]o have and exercise general and complete supervision and control of . . . probate judge . . . ."  (Doc. # 41-1 at 6); *see* Ala. Code § 40-2-11(1); therefore, Defendants argue that due to a lack of policymaking authority, Plaintiff cannot establish a basis for holding the County liable for McCollum's actions under § 1983-based claim.  (Doc. # 41-1 at 6-8). Further, Defendants point out that Plaintiff did not engage in any discovery and consequently does not have any evidence to support his allegations. (Doc. # 41-1 at 7). Additionally, Defendants allege that the

County is entitled to Eleventh Amendment Immunity on all claims. (*Id.*) In the alternative, Defendants assert that even if the court finds McCollum enforced an unconstitutional policy or is a final policymaker for the County, McCollum is nevertheless entitled to qualified immunity because "Plaintiff has failed to demonstrate that he was not acting within the scope of his discretionary authority or that the violation of a clearly established constitutional right occurred." (*Id.* at 7-8).

On May 17, 2010, Plaintiff filed his opposition to Defendants' motion for summary judgment, arguing that McCollum's affidavit is "totally false in every respect" and alleging facts purportedly showing that McCollum has policymaking authority for the County and Probate Judge Office. (Doc. # 48 at 1-2).[3] Specifically, Plaintiff asserts that McCollum controls the County's finances, "exploits [his job] in order to achieve his objective[s]," violated § 36-25-5 of the Alabama Code and Canons 3A(4) and 3C(1)(a) of the Alabama Canons of Judicial Ethics, prevented the County sewer system from extending to the "working class Black community of Culver Rd. area," and perpetuates racial discrimination on behalf of the County. (Doc. # 48 at 2-3). In support of those assertions, Plaintiff provides several exhibits, including the following: a copy of his check for the tax sale proceeds signed by McCollum; a news article mentioning Probate Judge McCollum's acceptance of a candidate's withdrawal from the 2010 District Attorney race; an opinion of the Attorney General to McCollum in his role as probate judge discussing whether the County can legally provide sewer service to certain areas at taxpayer expense; a news article about McCollum reporting the County Commissioner to the ethics commission for voting to proceed with the sewer service when the Commissioner had a potential bias; the transcript of the April 6, 2011 County

---

[3] Plaintiff's filings with the court are difficult to understand; nevertheless, after a painstaking review, the court believes it has accurately discerned Plaintiff's assertions and arguments.

Commission Meeting with McCollum presiding as Chairman; and a news article discussing allegations that the County's hiring practices discriminate against African-Americans and a statement from McCollum countering the allegation. (Doc. # 48 at 12, 14-15, 17-24, 26-27, 29-34, and 36). Plaintiff contends that these exhibits show that there are genuine issues of material fact and Defendants' motion should be denied.

Defendants filed a reply to Plaintiff's response to their motion for summary judgment. (Doc. # 50). They assert that in Plaintiff's response, Plaintiff alleges new claims not contained in the pleadings or any other filings with the court. (*Id.* at 3). Defendants further respond to each of Plaintiff's "new" claims, set out in five numbered paragraphs in his responsive motion, where he discusses McCollum's "discriminatory animus." (*Id.* at 3). They argue that the "facts" alleged by Plaintiff – that McCollum signs checks on behalf of the County; the article discussing the eligibility of a candidate in the 2010 District Attorney's race; the claim that McCollum is fighting to prevent the working-class African-American community from having access to the County sewer system; and the claim that the County has a policy of racial discrimination – do not demonstrate that McCollum, in his capacity as Chairman, enacts any policies, practices, or customs for the Office of Probate Judge. (*Id.* at 4-5). Additionally, Defendants assert that Plaintiff's claim that whether McCollum's failure to recuse himself from certain cases violates certain canons of judicial ethics is not properly before this court. (*Id.* at 5). Moreover, they reiterate that Plaintiff has not provided any evidence to support his allegations. (*Id.* at 6). In particular, they contend that Plaintiff's affidavit is deficient because he has no personal knowledge of the statements in the affidavit and he does not provide any facts, but merely states his belief that Defendants' claims are not supported by the facts.

(Doc. # 50 at 7-8).  Therefore, Defendants claim that because Plaintiff has not established that there is a genuine issue of fact, they are due judgment as a matter of law.

Plaintiff moves for partial summary judgment on his "claim for violation of his 5th Amendment rights" for the County's confiscation of his tax sale proceeds "without just compensation and without due process of law."[4]  (Doc. # 42 at 4).  Plaintiff asserts that the following facts are undisputed: (1) Plaintiff and his wife Jacquelyn Wilson were owed $5,033.12 from the County's May 27, 2008 tax sale[5] and (2) the County confiscated and retained the $5,033.12 for over eighteen months without giving Plaintiff or his wife any notice or opportunity to be heard.  Plaintiff argues that the County has unlawfully discriminated against Plaintiff and others based on race and socioeconomic status.  (*Id.* at 11).  Plaintiff also reiterates his Fifth Amendment Takings Clause claim (and asserts that Defendants do not dispute that this claim was violated).  (*Id.* at 12-13).  To support his motion, Plaintiff submits affidavits from himself and his wife demonstrating that they were the record owners for the properties at issue that were sold at a tax sale.[6]  (*Id.* at 17 and 19).  Additionally, Plaintiff provides an affidavit from Terry Wilson who stated that he witnessed and endured discrimination against African-Americans in various areas by the County.  (*Id.* at 22).

---

[4] On the day after Plaintiff filed his motion for partial summary judgment, Defendants filed objections to Plaintiff's motion and moved to quash it.  (Doc. # 43).  Defendants argued that Plaintiff's motion was untimely, but the court promptly rejected that contention.  (Doc. # 45).  Defendants also argued that the motion re-litigates Plaintiff's Takings Clause claim, an issue already decided by the court.  (Doc. # 45).  The court denied this aspect of Defendants' motion without prejudice, explaining that the court will wait until it receives all the briefing to determine whether it has already decided certain issues.  (Doc. # 45).

[5] Plaintiff states in his amended complaint that the County finally issued Plaintiff and his wife a check for $5,033.12 from the tax sale proceeds on March 1, 2010.  (Doc. # 28 at ¶ 12).

[6] The affidavits of Plaintiff and his wife state that they *are* the record owners of the property, but the court assumes that this is an error and they meant to write *were* the record owners as the property was sold.  Moreover, the court notes that Plaintiff has alleged in the amended complaint that he and his wife *owned* the property.  (*See* Doc. # 28 at ¶ 5).

6

In Defendants' response to Plaintiff's motion for partial summary judgment, Defendants advance several reasons for the court to deny Plaintiff's motion as to the Takings Clause claim. (Doc. # 49).  First, Defendants point out that Plaintiff's motion seeks judgment on his Fifth Amendment Takings Clause claim, which he did not include in his amended complaint and which the court dismissed in its July 20, 2010 order (Doc. # 25).  Further, Defendants argue that Plaintiff is re-litigating an issue already decided by the court, but in the alternative that the court did not dismiss the Takings Clause claim, they argue that the claim is unripe.  (Doc. # 49 at 1-2); *see Reahard v. Lee Cnty.*, 30 F.3d 1412, 1415 (11th Cir. 1994).  They contend that the claim is not ripe because it was dismissed by the Tuscaloosa County Circuit Court after Plaintiff failed to serve the defendants, not because the State failed to provide "an adequate post deprivation remedy for the property loss."  (Doc. # 49 at 4 (citing *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 195 (1985) ("the State's action is not 'complete' in the sense of causing a constitutional injury 'unless or until the State fails to provide an adequate postdeprivation remedy for the property loss'")).  Regarding Plaintiff's due process claim, Defendants do not address this claim at all in their response.  (Doc. # 49).

## II.    STANDARD OF REVIEW[7]

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Chapman v. AI*

---

[7] Federal Rule of Civil Procedure 56 was amended on December 1, 2010.  However, even with the 2010 amendments, "the standard for granting summary judgment remains unchanged."  Fed. R. Civ. P. 56 Advisory Committee's Note (2010 Amendments).

*Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000). Affidavits or declarations "used to support or oppose a motion must be made on personal knowledge." Fed. R. Civ. P. 56(c)(4). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings that the moving party believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. No genuine issue of material fact exists when there is a "complete failure of proof concerning an essential element of the nonmoving party's case." *Id*. Once the moving party has met its burden, Rule 56(a) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Id*. at 324.

The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Chapman*, 229 F.3d at 1023. All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. *Chapman*, 229 F.3d at 1023. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Chapman*, 229 F.3d at 1023. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249-50. The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115-1117 (11th Cir. 1993) (citing *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428 (11th Cir. 1991) (en banc)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact

(*i.e.*, facts that would entitle it to a directed verdict if not controverted at trial), *Fitzpatrick*, 2 F.3d at 1115, and by showing that "on all the essential elements of its case . . . no reasonable jury could find for the nonmoving party," *Four Parcels of Real Prop.*, 941 F.2d at 1438.  Once the moving party makes such a showing, the burden shifts to the nonmoving party to produce significant, probative evidence demonstrating a genuine issue for trial.

On the other hand, if the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the nonmoving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the nonmoving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.  The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of evidence in the record to support a judgment for the nonmoving party on the issue in question.  This method requires more than a simple statement that the nonmoving party cannot meet its burden at trial but does not require evidence negating the nonmovant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the nonmoving party's case.  *Fitzpatrick*, 2 F.3d at 1115-16.  If the movant meets its initial burden by using this second method, the nonmoving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the nonmoving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  However, when responding, the nonmovant can no longer rest

on mere allegations, but must set forth evidence of specific facts.  *Lewis v. Casey*, 518 U.S. 343, 358

(1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

Courts liberally read briefs filed by *pro se* litigants.  *Lorisme v. I.N.S.*, 129 F.3d 1441, 1444

n.3 (11th Cir. 1997).  However, this leniency "does not give the courts license to serve as *de facto*

counsel or permit them to rewrite an otherwise deficient brief."  *Reeves v. DSI Sec. Servs.*, 331 F.

App'x 659, 661 (11th Cir. 2009) (citing *GJR Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359,

1369 (11th Cir. 1998), *overruled on other grounds by Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009)).

## III.    DISCUSSION

After entry of the court's July 20, 2010 order (Doc. # 25) and the filing of Plaintiff's amended

complaint (Doc. # 28), Plaintiff's remaining claims consist of: (1) a due process claim under § 1983;

(2) an equal protection claim under § 1983; (3) a claim for tax excess under Alabama Code § 40-10-

28 against the County; and (4) a claim for unconstitutional application of Alabama Code §40-10-120

against both Defendants.

### A.    Section 1983 Legal Standards

Section 1983 is a vehicle for redressing violations of federal rights and does not itself create

any substantive rights.  *Doe v. Sch. Bd. of Broward Cnty., Fla.*, 604 F.3d 1248, 1265 (11th Cir.

2010); 42 U.S.C. § 1983.  To assert a cause of action based on § 1983, a plaintiff must establish two

elements: (1) a violation of a constitutional right, and (2) that the alleged violation was committed

by a person acting under color of law.  *Holmes v. Crosby*, 418 F.3d 1256, 1258 (11th Cir. 2005).  A

person acts under color of law "when he acts with authority possessed by virtue of his employment

with the state" or other governmental entity.  *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303

(11th Cir. 2001).

To establish a violation of the Equal Protection Clause, a plaintiff must allege that "through state action, similarly situated persons have been treated disparately," *Draper v. Reynolds*, 369 F.3d 1270, 1278 n.14 (11th Cir. 2004) (internal quotations and citations omitted), and provide evidence that the "discriminatory treatment was based on some constitutionally protected interest such as race," *Jones v. Ray*, 279 F.3d 944, 947 (11th Cir. 2001).  Individuals are "similarly situated" when they are "prima facie identical in all relevant respects."  *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1264 (11th Cir. 2010) (citations and emphasis omitted).

Regarding violations of due process, a claim for deprivation of property without due process is a procedural due process claim under the Fourteenth Amendment.  *Am. Fed'n of Labor and Cong. of Indus. Orgs. v. City of Miami, Fla.*, 637 F.3d 1178, 1186 (11th Cir. 2011) (citations omitted).  The Supreme Court explained that procedural due process "protect[s] persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property."  *Carey v. Piphus*, 435 U.S. 247, 259 (1978).  To assert a § 1983 claim alleging a violation of procedural due process in this Circuit, a plaintiff must establish three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process."  *Am. Fed'n of Labor*, 637 F.3d at 1186.  "Due process entitles an individual to notice and some form of hearing before state action may finally deprive him or her of a property interest."  *Cryder v. Oxendine*, 24 F.3d 175, 177 (11th Cir. 1994) (citing *Mathews v. Eldrige*, 424 U.S. 319, 333 (1976)).  A violation of procedural due process has not occurred "unless and until [a] State fails to provide due process . . . [and] the state may cure a procedural deprivation by providing a later procedural remedy."  *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1294 (11th Cir. 2007) (citations omitted).

To impose § 1983 liability on a municipality, a plaintiff must show that his constitutional rights were violated as a result of one of the following: (1) an official government policy; (2) "a custom or practice so pervasive and well-settled that it assumes the force of law"; or (3) the actions or decisions of an official with final policymaking authority for the municipality. *Doe*, 604 F.3d at 1263. The Eleventh Circuit construes the policy or custom requirement as "preclud[ing] § 1983 municipal liability for a subordinate official's decisions when the final policymaker delegates decisionmaking discretion to the subordinate, but retains the power to review the exercise of that discretion." *Scala v. City of Winter Park*, 116 F.3d 1396, 1399 (11th Cir. 1997); *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). In other words, "[f]inal policymaking authority over a particular subject area does not vest in an official whose decisions in the area are subject to meaningful administrative review." *Scala*, 116 F.3d at 1401; *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) (official has final policymaking authority when he "possesses final authority to establish municipal policy with respect to the action ordered"); *see also Martinez v. City of Opa-Locka, Fla.*, 971 F.2d 708, 714-715 (finding final policymaking authority where "the City Manager's decision to hire or fire administrative personnel is completely insulated from review"). Whether a particular person has final policymaking authority is a question of state law. *Doe*, 604 F.3d at 1264; *see Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 738 (1989). Additionally, to impose municipal liability, a plaintiff must establish that "the municipal action was taken with the requisite degree of culpability, i.e., . . . with deliberate indifference to its known or obvious consequences." *Doe*, 604 F.3d at 1263.

Eleventh Amendment immunity protects states and arms of the state from suit in federal court, but does not apply to counties or other government units. *Rosario v. Am. Corrective*

*Counseling Servs., Inc.*, 506 F.3d 1039, 1043 (11th Cir. 2007).  The Supreme Court has repeatedly refused to extend immunity to counties.  *Northern Ins. Co. of N.Y. v. Chatham Cnty.*, 547 U.S. 189, 193 (2006).

Qualified immunity shields municipal officers from liability under § 1983 if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Officers entitled to qualified immunity are not just immune from liability, but from being sued.  *Sanders v. Howze*, 177 F.3d 1245, 1249 (11th Cir. 1999).  To obtain qualified immunity, the municipal officer must first demonstrate that he acted within his "discretionary authority" when the allegedly wrongful acts ensued.  *Lewis v. City of West Palm Beach, Fla.*, 561 F.3d 1288, 1291 (11th Cir. 2009). Discretionary authority includes "all actions of a governmental official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority." *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994) (internal citations omitted).  "A bald assertion that the [officer's] acts were taken pursuant to the performance of duties and within the scope of duties will not suffice."  *Harbert Int'l, Inc. v. James*, 157 F.3d 1271,1282 (11th Cir. 1998) (citations omitted).

Once the court determines the defendant was engaged in a discretionary function, the burden shifts to the plaintiff to demonstrate that the officer is not entitled to qualified immunity.  *Lewis*, 561 F.3d at 1291.  To determine whether qualified immunity applies, courts generally use a two-part test which makes two inquiries: (1) construing the facts in the light most favorable to the plaintiff, whether the officer's conduct violated a constitutional right, and (2) whether the right was "clearly established" when violated.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Courts have flexibility in

determining the order in which to approach this two-part test, and if courts determine that a right was not clearly established, and, in fact, need not discuss whether a constitutional violation occurred at all. *Pearson v. Callahan*, 555 U.S. 223 (2009). "A right may be clearly established for qualified immunity purposes in one of three ways: (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Lewis*, 561 F.3d at 1291-1292 (citations omitted).

### B.      Defendants' Motion for Summary Judgment

In Defendants' motion for summary judgment, Defendants surprisingly assert that Plaintiff's only remaining claims in his amended complaint are "race-based 14th Amendment equal protection violation[s]" against Defendants.  (Doc. # 41-1 at 3).  Therefore, Defendants seek judgment as a matter of law only on this claim.  Further, Defendants assert that the County is entitled to Eleventh Amendment immunity and that McCollum is entitled to qualified immunity.

### 1.      Plaintiff's Equal Protection Claim

Plaintiff asserts that Defendants violated his equal protection rights but fails to explain how other similarly situated persons were treated differently from him and how this allegedly discriminatory conduct violated his constitutionally protected right.  *See Draper*, 369 F.3d at 1278 n.14; *Jones*, 279 F.3d at 947.  Plaintiff asserts that the evidence he has submitted shows that the County discriminates against African-Americans in regards to the sewer system.  But even if that were the case, such a showing does not relate to the discrimination allegedly suffered by Plaintiff in

this case, nor does it provide a comparison to persons similarly situated to Plaintiff.  Indeed, Plaintiff has not provided substantial evidence to establish a violation of his equal protection rights.

The absence of a constitutional violation renders it unnecessary for the court to determine whether Defendants are subject to municipal liability because of a custom, policy, or actions of a final policymaker.  *See Garczynski v. Bradshaw*, 573 F.3d 1158, 1171 (11th Cir. 2009).  But even assuming, *arguendo*, Plaintiff had presented sufficient Rule 56 evidence of a constitutional violation, there is nothing in the record that suggests any basis for municipal liability under § 1983 exists. Plaintiff's § 1983 claim appears to rest on the theory that McCollum has final policymaking authority for the County.  Plaintiff provides evidence, such as McCollum's signature on a County check and news articles discussing McCollum's role in the sewer system matter, that allegedly proves McCollum has final policymaking authority.  Defendants do not dispute the evidence submitted by Plaintiff, but they argue that this evidence does not prove McCollum has final policymaking authority.  Therefore, the dispute does not concern a question of fact, but whether the facts establish the final policymaker basis for holding a municipality liable under § 1983.  This determination hinges on an evaluation of state law and a finding of the requisite culpability on behalf of the municipality.  Aside from the mere allegation of McCollum's final policymaking authority, Plaintiff has not endeavored to satisfy the requirements for municipal liability under § 1983.  Furthermore, in the event that Plaintiff's allegations can be construed as asserting municipal liability based on a County custom or policy, the court notes that Plaintiff has not pointed to any custom or policy on behalf of the County but has merely alleged one exists.

15

Defendants have demonstrated both (1) the absence of evidence in the record to support Plaintiff's equal protection claim under § 1983, and (2) that they are entitled to judgment as a matter of law on that claim. For example, they point out that Plaintiff has failed to show his clearly established constitutional rights were violated and also has failed to establish a basis for municipal liability. (Docs. # 41-1 at 5-8 and 50 at 5). Additionally, to show Plaintiff's failure to establish a basis for municipal liability, they provide law supporting their argument and affirmative evidence negating a material fact. Defendants assert that § 40-2-11(1) of the Alabama Code proves that McCollum as Chairman of the County does not have final policymaking authority over the Office of the Probate Judge. (Doc. # 41-1 at 5-6); *see* Ala. Code § 40-2-11(1) (stating that the Alabama Department of Revenue has the "power and authority" to supervise and control the probate judges and all county officials). Further, Defendants present McCollum's affidavit where he testified that, as Chairman of the County, he did not have any "authority or control over the policies, practices or procedures of the Office of the Probate Judge" and that his only role in the County was to cast a "tie [breaking] vote" among the County commissioners. (Doc. # 41-1, Ex. A). Finally, Defendants challenge Plaintiff's scant evidence because Plaintiff provides an affidavit declaring his belief that Defendants' arguments are factually unsupported, but his affidavit is not based on personal knowledge and thus is not in compliance with Rule 56. (Doc. # 50 at 7); *see* Fed. R. Civ. P. 56(c)(4). Defendants have established the absence of evidence in the record to support Plaintiff's equal protection claim and thereby met their burden on summary judgment.[8]

### 2.    Defendants' Immunity Defenses

---

[8] The court notes that Defendants could have been clearer and more thorough in their motion, but in the end, they accurately illustrated the absence of record evidence to support Plaintiff's claim.

Defendants make a conclusory allegation that the County is entitled to Eleventh Amendment immunity on all claims against it.  Defendants have not provided any evidence or law in support of this allegation.  The Eleventh Amendment precludes suit in federal court against states and arms of the state, but not against counties or other government units.  *Rosario*, 506 F.3d at 1043.  The Supreme Court has repeatedly refused to extend immunity to counties.  *Northern Ins. Co. of N.Y.*, 547 U.S. at 193.  Accordingly, the County is not entitled to Eleventh Amendment Immunity.

In the alternative, Defendants argue that McCollum is entitled to qualified immunity. Although the court finds Plaintiff's equal protection claim is insufficient to withstand summary judgment, the court addresses Defendants' qualified immunity claim as an alternative basis for summary judgment.  That is, if McCollum is entitled to qualified immunity, he would be immune from Plaintiff's entire lawsuit.  *See Sanders*, 177 F.3d at 1249.  Defendants assert that McCollum is entitled to qualified immunity *because* Plaintiff failed to show that he was not acting within his discretionary authority or that his clearly established constitutional right was violated.  (Doc. # 41-1 at 8).  Defendants misunderstand their burden on a qualified immunity defense; they must make some, albeit limited, showing before Plaintiff has the burden to rebut the defense.  Notwithstanding that obligation, Defendants merely allege that McCollum is entitled to the defense without providing any supporting evidence or even addressing the "discretionary authority" factor.  At this point, and perhaps inexplicably, McCollum has not fulfilled his burden in showing he is entitled to qualified immunity.[9]

**C.     Plaintiff's Motion for Partial Summary Judgment**

---

[9] Again, neither Defendant has addressed the other claims asserted in this case by Plaintiff, and McCollum has not argued he is entitled to qualified immunity on those.

In Plaintiff's motion for summary judgment, Plaintiff seeks judgment as a matter of law on only two claims: 1) his Fifth Amendment Takings Clause claim and 2) his Due Process claim. (Doc. # 42 at 4). In Defendants' response, Defendants only addresses Plaintiff's Takings Clause claim. (Doc. # 49 at 1).

## 1.    Plaintiff's Takings Clause Claim

As Defendants correctly note (Doc. # 49 at 1-2), the court's July 20, 2010 order dismissed Plaintiff's Takings Clause claim alleged in his original and proposed amended complaint (Doc. # 24 at 10-11). In his amended complaint, Plaintiff did not attempt to correct any pleading deficiencies regarding this claim or provide any new information to the court; he simply reasserted his Takings Clause claim in the same form as in his proposed amended complaint and in substantively the same form as in his original complaint. Additionally, as Defendants correctly point out, the claim remains unripe. (*Id*. at 10). Plaintiff has not provided any evidence or argument that would alter or otherwise call into question the court's ruling in its July 20, 2010 order. Indeed, Plaintiff's Takings Clause claim, having been previously dismissed by this court, is not properly part of this action as it has been already dismissed for the same reasons discussed in the court's prior order. (*Id*. at 7-11).

## 2.    Plaintiff's Due Process Claim

Plaintiff also moves for judgment as a matter of law on his Due Process claim. (Doc. # 42 at 4). Without specifying what type of due process claim he is bringing, Plaintiff claims that the County's confiscation and retention of his tax sale proceeds occurred "without any judicial hearing and without any notice or opportunity to be heard." (*Id*. at 6). Considering Plaintiff's *pro se* status, it seems Plaintiff is alleging a procedural due process claim under the Fourteenth Amendment and the court construes it as such. (*See id*. at 5-6); *Am. Fed'n of Labor*, 637 F.3d at 1186 (claim for

18

deprivation of property without due process is a Fourteenth Amendment procedural due process claim); *Lorisme*, 129 F.3d at 1444 n.3 (construing a *pro se* brief liberally).  Again, Defendants are silent on Plaintiff's due process claim.  (Doc. # 49).

The court must first determine whether Plaintiff has alleged he has been deprived of an actual constitutional right.  Plaintiff makes conclusory statements alleging that he was deprived of his tax sale proceeds without due process, but fails to specifically explain how Defendants deprived him of that "property" without due process.  It appears Plaintiff attempted to redeem his tax sale proceeds from the County, but his request was denied and he was instructed to submit a quitclaim deed to receive the proceeds.  (Doc. # 42 at 8).  Plaintiff has also alleged that McCollum would not give him the proceeds, so Plaintiff filed suit in the Tuscaloosa County Circuit Court.  (*Id*.)  Plaintiff argues that because he was required to wait fifteen months "without a hearing or any judicial access in the State Courts of Alabama," the County deprived him of due process and he consequently filed suit in this court.  (*See id.*)  However, Defendants have provided evidence that Plaintiff's suit in the County Circuit Court was dismissed because Plaintiff did not serve the defendants in that case. (Doc. # 49 at 3 and Ex. B-C).

In the event Plaintiff is basing his due process claim on McCollum's deprivation of his property, Plaintiff has not shown any required procedures or policies the County failed to follow when withholding his tax sale proceeds.  If Plaintiff's due process claim revolves around the Circuit Court's dismissal of his case, resolving all reasonable doubts about the facts and justifiable inferences in favor of Defendant, the Circuit Court did not deprive Plaintiff of due process since Plaintiff's failure to properly serve the defendants caused his case to be dismissed.  A procedural due process violation has not occurred "unless and until the State fails to provide due process," and

19

Plaintiff has not shown, nor does the record indicate, that the state or the County has failed to provide due process to Plaintiff. *See Watts*, 495 F.3d at 1294. Therefore, without a constitutional deprivation, Plaintiff cannot satisfy his burden on summary judgment for his due process-based § 1983 claim. *See id*. at 1294.

Moreover, even if Plaintiff had alleged a due process violation, as previously discussed in the analysis of Plaintiff's equal protection claim, he has not established a basis for municipal liability under § 1983. *See supra* Part III.B.1. In sum, Defendants demonstrated that Plaintiff provided insufficient evidence to impose liability on the County under the final policymaker basis and that he failed to adduce *any* evidence of an official County policy or well-settled custom, whether it concerns race-based discrimination or the deprivation of property. Given the meager Rule 56 record, Plaintiff cannot show that he is entitled to judgment as a matter of law on his due process claim.

## IV.   Conclusion

For the reasons discussed above, the court concludes that Defendants' Motion for Summary Judgment (Doc. # 41) is due to be granted and Plaintiff's Motion for Partial Summary Judgment (Doc. # 42) is due to be denied. Going forward, Plaintiff's remaining claims consist of: (1) a due process claim under § 1983; (2) a claim for tax excess under Alabama Code § 40-10-28 against the County; and (3) a claim for unconstitutional application of Alabama Code §40-10-120 against both Defendants. Plaintiff's Equal Protection Claim is due to be dismissed and his Takings Clause claim was previously dismissed by this court and is not properly part of this action. (Doc. # 24 at 7-11). An order consistent with this Memorandum Opinion will be entered separately.

**DONE** and **ORDERED** this _____11th_____ day of October, 2011.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE